IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBIN DIXON,

    Plaintiff,

    v.                                              Civil Action No. 1:17-cv-00430-PX

SALISBURY SENIOR HOUSING I
OPCO, LLC,

    Defendant.

\*\*\*\*\*\*

**<u>MEMORANDUM OPINION</u>**

Pending before the Court is Defendant Salisbury Senior Housing I Opco, LLC ("Salisbury")'s motion to dismiss, or, in the alternative, for summary judgment. ECF No. 26. The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons set forth below, the Court grants Salisbury's motion to dismiss without prejudice.

**I.    BACKGROUND[1]**

Plaintiff Robin Dixon ("Dixon") worked at Lakeside Assisted Living ("Lakeside") as an LPN Shift Supervisor from July 2009 until December 1, 2014, when she was discharged for unexcused absences from work. ECF No. 1 ¶¶ 10, 15. Several months before her termination, Dixon began to suffer from excessive vaginal bleeding and abdominal pain. *Id.* ¶ 12. Dixon was diagnosed with uterine fibroids, menorrhagia, and, at least for a time, cancer. *Id.* ¶ 12, 13. The cancer diagnosis proved to be a mistake. *Id.* ¶ 13. Nonetheless, Dixon's treating physician

---

[1] The following facts are taken from Dixon's Complaint. The court accepts Dixon's well-pleaded allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

recommended that she not work while pursuing medical treatment. *Id.* ¶ 13. Dixon requested to not work certain shifts so as to accommodate such treatment. *Id.* Her immediate supervisor denied these requests. *Id.* Dixon thereafter met with her human resources supervisor to seek reasonable accommodation for her treatment needs. *Id.* ¶ 14. In response, Dixon's supervisors reduced the number of shifts that she was expected to work. *Id.*

On the morning of November 29, 2014, Dixon notified her supervisor that she could not work her evening shift because she woke up in a pool of blood and had a high fever. *Id.* ¶ 15. Two days later, on December 1, 2014, Dixon was terminated. *Id.* ¶ 16.

On November 19, 2016, Dixon received a notice of right to sue from the Equal Employment Opportunity Commission (EEOC). *Id.* ¶ 9. On February 14, 2017, Dixon filed this suit, contending that her termination violated the Americans with Disabilities Act (ADA). *Id.* at 1–2; 42 U.S.C. § 12101. On June 14, 2018, Salisbury moved to dismiss the Complaint. ECF No. 26. Dixon sought a continuance of her response to the motion until October 5, 2018, which this Court granted. ECF No. 29. As of today, however, Dixon has not filed a response. Given that over a month has passed since Dixon's requested filing date, the Court will decide the motion without the benefit of Dixon's response.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555. "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

### III. ANALYSIS

Salisbury primarily contends that dismissal is warranted because it was not the corporate entity that owned or controlled the assisted living facility at the time of Dixon's employment. ECF No. 26 at 1. Dixon has pleaded that Salisbury is a "successor in interest" to the former corporate entity that controlled Lakeside Assisted Living during Dixon's employment. ECF No. 1 ¶ 7. Indeed, Dixon specifically avers that Salisbury was formed as a corporation, which acquired Lakeside in 2015, *after* Dixon's termination on December 1, 2014. Consequently, Salisbury can only be held liable if it is a successor in interest to the previous owner of the facility. *EEOC v. Phase 2 Invs., Inc.*, 310 F. Supp. 3d 550, 559 (D. Md. 2018).

The United States Court of Appeals for the Fourth Circuit has not expressly established liability for successor entities in the ADA context. *Phase 2 Invs.*, 310 F. Supp. 3d at 562.

However, several district courts have allowed suit to proceed on the successor liability theory. *See, e.g.*, *Phase 2 Invs.*, 310 F. Supp. 3d at 562; *Lipscomb v. Techs. Servs. and Info., Inc.*, No. DKC 09-3344, 2011 WL 691605, at *7 (D. Md. Feb. 18, 2011); *Weintraub v. Bd. of Cty. Comm'rs*, No. DKC 2008-2669, 2009 WL 10685453, at *2 (D. Md. May 26, 2009).

Courts consider several factors when determining whether the successor entity may be held liable for the prior entity's violations, to include whether: (1) the successor entity was on notice of the charge; (2) the predecessor entity can provide relief; (3) there has been a substantial continuity of business operations; (4) the successor entity uses the same physical plant; (5) the successor entity uses the same or substantially the same work force; (6) the successor entity uses the same or substantially the same supervisory personnel; (7) the same jobs exist under substantially the same working conditions; (8) the same machinery, equipment, and methods of production are employed; and (9) the same service is provided. *Lipscomb*, 2011 WL 691605, at *8 (quoting *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir.1974)). The factors "essentially look[] to whether a successor had notice, whether a predecessor had the ability to provide relief, and the continuity of the business." *Lipscomb*, 2011 WL 691605, at *8.

Dixon has pleaded no facts in the Complaint sufficient for this Court to determine whether successor liability subjects Salisbury to suit. Apart from simply stating, in conclusory fashion, that Salisbury is the successor entity, *see* ECF No. 1 ¶ 7, no factual allegations support that conclusion. *See Phase 2 Invs.*, 310 F. Supp. 3d at 557 (analyzing the relevant business arrangement based on purchase of assets, contractually negotiated liabilities, and indemnity clauses). Absent additional factual averments, Dixon's allegations do not raise a right to relief above a speculative level. *Twombly*, 550 U.S. at 555.

Dixon has also failed to pursue this issue diligently in that she has not responded to this motion after seeking a continuance. The Court will consequently dismiss the Complaint. However, it will do so without prejudice to refile a new Complaint with sufficient facts to demonstrate successor liability, if possible.

**IV.    CONCLUSION**

For the foregoing reasons, the Court grants Salisbury's motion to dismiss, and a separate Order follows.


Dated: <u>November 19, 2018</u>         __/S/_____
                                         Paula Xinis
                                         United States District Judge